## Cherry *v.* Nusbaum, Appellant.

Argued December 4, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Ward C. Henry,* with him *Geo. J. Schorr,* for appellants.—The verdict of $3,000 in favor of Patrick Cherry was excessive.

The testimony of a witness as to speed and manner of driving at least half a mile from the scene of the accident was wrongfully allowed to go to the jury.

The description of the collision given by plaintiffs' testimony is so impossible that the case should not have gone to the jury: Seiwell v. Director General, 273 Pa. 259; Harkins v. P. R. T., 286 Pa. 465, 466; Mack v. Gypsum Co., 288 Pa. 9, 11; Fisher v. Amsterdam, 290 Pa. 1.

*Clarence G. Myers,* with him *Archibald T. Johnson,* of *Duane, Morris & Heckscher,* for appellees.—The verdict of $3,000 in favor of Patrick Cherry was not excessive.

The trial judge committed no error in permitting the jury to pass upon all the facts.

OPINION BY MR. JUSTICE FRAZER, January 6, 1930:

These two appeals, the result of the same accident, were argued together and we are now asked to reverse the judgments of the court below in discharging rules for new trials or refusing to enter judgment n. o. v. in each case for defendant. Two actions in trespass were instituted and tried at the same time, to recover damages claimed by plaintiffs for personal injuries received by the collision of two automobiles on a public road in the State of New Jersey. Plaintiffs at the time of the accident were traveling from Atlantic City toward

Camden and defendant was driving toward the former place; the parties accordingly were driving in opposite directions on what is known as the White Horse Pike. As a result of the collision both plaintiffs were seriously injured, and upon the trial, the jury rendered verdicts in their favor of $10,000 and $3,000 respectively. Affidavits of defense were not filed, and plaintiffs, in their statements of claim, charge that the accident and consequent injuries were caused by careless and negligent operation of defendant's car by her chauffeur, the car at the time being occupied by defendant and her family.

Our examination of the record shows the conflict of testimony to be more apparent than real. There were, of course, the wide discrepancies, usual in cases of this sort, as to the speed of the motor vehicles concerned and the actions of the parties preceding and at the moment of the collision. The record, however, sufficiently discloses that the predominant reliable evidence sustains plaintiff's contention as to their right to recover compensation for the injuries sustained.

There is but one difficult question in the case—the precise manner in which the collision occurred, to which we shall refer presently. The evidence clearly proves that not only was there careless and negligent but also actual reckless driving by defendant's chauffeur. Certainly the testimony of the driver furnished no sound support for appellant's contention that plaintiffs' car collided with defendant's while attempting to pass a car parked at the roadside. On the contrary, the evidence shows he was altogether heedless of the presence of plaintiffs' car and wholly indifferent to the matter of speed or to the indications of his speedometer, as he testified: "No man that drives a steady car don't have to look at no speedometer," which prompted the inquiry from defendant's counsel: "I infer from that you mean you did not look at your speedometer? A. No, sir." On some parts of the road he said the speed of the car, on this occasion, was at the rate of 15 miles an hour,

other times 25 miles and then 30; "the highest around 30 or 32 miles." Asked if he was driving, as was testified, at from 40 to 60 miles an hour, his sole answer was: "I was never driving 60 miles an hour; no, sir"; and he claimed he was driving only at the rate of 15 miles when the collision happened; if such was the speed, the car could have been brought to a standstill in 21 feet and the accident avoided, or little or no damage would have resulted from the contact. On the other hand, there is, in addition to testimony of the two plaintiffs that he was driving from 40 to 50 miles an hour immediately before and at the moment of the accident, the reliable testimony of four disinterested witnesses, who were on the road in automobiles at the time of the collision, fixed his speed as "very fast," at least 50 miles an hour, which speed he kept up to the instant of the crash. He was plainly observed by these witnesses coming toward the place of the collision at a terrific speed, driving in and around vehicles ahead of him, apparently heedless of probable collisions. As one witness whose car had been closely and swiftly passed by him, testified: he would "cut out and in, he would disappear from view and then come out again and pass another car and return to view." The uncontradicted testimony shows that plaintiffs' car was traveling not over 22 miles an hour at the time of the accident.

As to the precise manner of the collision, our examination of the evidence bearing upon that aspect of the case leads to the same conclusion the jury must have reached, that there is nothing incredible about it as described by the witnesses. Study of cases similar to the present one and repeated details by persons speaking from experiences have long shown that even spectators in the immediate vicinity of places of collisions of motor vehicles are unable to describe with exactitude the circumstances and details of the contact, for the simple reason it occurs with utmost suddenness and so unexpectedly and in such minute space of time, that the eye

cannot note or the mind be impressed by the swift occurrence. Spectators of this accident saw the speeding car of defendant approach, darting in and out among the traffic, saw it, when it reached plaintiffs' car, swirl around and crash its rear side into the middle of the other automobile. A detail, mentioned by no other witness, given by Mr. Cherry, one of plaintiffs, was to the effect that defendant's car suddenly stopped before it whirled around, and then started again. It is true, as the court below notes, an automobile going 50 miles an hour could scarcely come to such an abrupt stop. But probably, as the court also states, being in the wrecked car, seriously injured and greatly excited, the witness's mind received an erroneous impression. As such, we think it does not lessen in the slightest degree the convincing weight of the statements of other witnesses for plaintiffs. That, however, was a matter for the jury to determine, and they evidently gave it proper consideration.

In view of the detailed intelligent and adequate descriptions of the collision given by the several witnesses, we attach no weight to the contention of defendant's counsel that the facts were not so described as to enable the jury to form a mental picture of the occurrence and secure an independent judgment thereon. It would require a dull intellect to fail to get, from the circumstances of this accident as detailed by intelligent witnesses, a vivid and complete mental vision of the occurrence, and the jury could easily decide, as they evidently did, that the accident occurred in the manner detailed and described by credible witnesses.

None of the cases cited by defendant are applicable. We are referred, for instance, to Seiwell v. Director General, 273 Pa. 259, wherein, unlike the plain situation presented by the case in hand, it went into the region of imagination and where this court said (page 261), "We are asked to give credence to the proposition that the suction from a passing train was sufficient to draw into

it, up grade, a stationary automobile with the brake on." The facts in the present case were amply sufficient and plain to prove negligence on the part of defendant, and under the evidence the jury could hardly have done otherwise, to adopt the words of the learned court below, "than charge the defendant with an absence of care under the existing circumstances."

We find nothing in the charge to the jury to be criticized. It was impartial and directive within proper bounds, and we agree with the court below that the verdict is not excessive; plaintiffs sustained very serious physical injuries, and one of them, in consequence of the accident, wholly lost her power of speech, a misfortune which apparently will be permanent.

The assignments of error are without merit and are therefore not sustained, except the fourth, relative to the payments made by Mr. Cherry for medical and hospital services, nurses, etc., for Miss Cherry. The court below instructed the jury that these expenses, having been paid by him, constituted proper items of damage recoverable from defendant. This was error. The law imposed no obligation upon him to pay them, although the amounts so expended were necessitated by the injuries Miss Cherry sustained by the accident, and were accordingly an established liability against defendant. Mr. Cherry having elected to pay them, did so, not as one legally responsible for them, but as a mere volunteer, and as such has no right of recovery from appellant. Presumably, however, the jury included the items in the verdict given Miss Cherry. The evidence shows that the total amount of these bills paid by Mr. Cherry was $425, and this amount must be deducted from the verdict of $3,000 awarded him by the jury. With this modification, the verdicts of the jury and judgments of the court below are affirmed, with costs on defendant.